TREAT (SMITH v.).   See Case No. 13,117.

## Case No. 14,162.

### TREAT v. STAPLES.

[Holmes, 1.] [1]

Circuit Court, D. Maine.   July, 1870.

INTERNAL REVENUE—PROPERTY SEIZED—REPLEVIN —DAMAGES.

1. Under the act of July 13, 1866 (14 Stat. 172), replevin does not lie for property of the plaintiff seized under a warrant by a collector of internal revenue as the property of another.

2. Nominal damages only should be allowed on judgment for defendant in replevin, where he has failed to show right in himself to the property in controversy.

Action for replevin [by Jonathan F. Treat against Miles S. Staples] for a vessel, &c., seized by the defendant, a deputy-collector of internal revenue, as the property of one Kidley, for non-payment of taxes assessed upon her. The case was heard by the court upon an agreed statement of facts, the material parts of which are stated in the opinion.

J. S. Rowe, for plaintiff.
George F. Talbot, for defendant.

SHEPLEY, Circuit Judge. This is an action of replevin for the brigantine M. A. Herera, her boats, tackle, and apparel. The general issue was pleaded and joined, and the defendant also denied that property was in the plaintiff, and set up property and right of possession in himself as a deputy-collector of the internal revenue of the United States.

On the twenty-eighth day of July, A. D. 1863, the brigantine being then the property of Annie M. Kidley, and registered as a British vessel at St. Andrews, in the province of New Brunswick, was by her conveyed by mortgage duly executed and recorded to James Treat, of Frankfort, Me., to secure the payment of a note for twenty thousand dollars, payable in one year from that date.

James Treat being indebted to the plaintiff, Jonathan F. Treat, on the thirty-first day of March, A. D. 1864, assigned the mortgage to the plaintiff then and now a resident in California, and delivered the assignment to the plaintiff's agent at Frankfort, Me. The mortgage debt was not paid, and the plaintiff had the right to immediate and exclusive possession of the vessel. In the mortgage, Annie M. Kidley is described as of Bristol, England, then residing at St. Andrews, in the province of New Brunswick. Her parents were British subjects, residing at the time of her birth, and ever since, at Clifton, near Bristol, England. In 1854, being then in her twelfth year, she came from Clifton to Frankfort, Me. There she remained in the family of George Treat, a brother of the plaintiff, until the spring of 1863, with the exception of occasional voy-

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

ages to sea, as a companion of the wife of George Treat, who is a master mariner. In July, 1863, she went to St. Andrews, in the province of New Brunswick, where she had friends, and resided in the family of J. H. Whitlock, collector of that port, and attended school. In March or April, 1864, she made a short visit to Massachusetts. In June, 1865, she made a visit of three weeks' duration to Frankfort, then returned to St. Andrews, and in the fall of that year returned to her home in England, where she has since resided.

In June, 1865, the assistant-assessor of internal revenue for collection district number five, in the state of Maine, which embraced the town of Frankfort, returned to John West, collector of internal revenue for that district, a list of persons in Frankfort and Searsport subject to internal-revenue tax. In this list Annie M. Kidley is assessed on income $1,557.70, and penalty $389.42; and at the foot of the list the assessor certifies that "Miss Annie M. Kidley, of Frankfort, above named, upon being duly notified and required to return to me, Charles H. Pierce, assistant-assessor of the tenth division of the fifth collection district of the state of Maine, the amount of her income, gains, and profits during the year 1864; and, after reasonable time allowed her therefor, she having neglected to render me the return of said income, gains, and profits for the said year 1864, from the best information I can obtain I have valued the said income, gains, and profits for said year at $18,377, and upon that valuation have assessed upon her a tax or duty of $1,558.70; and have also assessed upon her a tax or duty of $389.67, it being twenty-five per cent. added thereto as a penalty for willfully neglecting to return and render in to me the income, gains, and profits accruing to her as aforesaid in the year 1864, the whole duty or tax being $1,948.37." July 25, 1865, John West, the collector, committed to the defendant, his deputy-collector, duly appointed, a list of unpaid taxes for collection, in which list is included an income tax against Annie M. Kidley of $1,557.70, and a penalty of $389.42. At some time between the 1st and 7th of August, defendant called at Jonathan Treat's where he understood Miss Kidley had previously lived, and left there a notice for her to pay her tax. Aug. 9 and Aug. 21, defendant also deposited in the post-office, addressed to Annie M. Kidley, Frankfort, Me., notices to pay the tax in the usual form. These notices were not taken from the office, and were by the postmaster returned to defendant in April, 1866. Sept. 22, 1867, West called upon James Treat, and told him his business was to collect Annie M. Kidley's tax, or distrain her property, and asked said Treat if he was her agent, or if she had an agent in this country. James Treat replied, that Miss Kidley lived in New Brunswick, and had no agent in this country. Sept. 23, 1867, defendant received from John West, the collector, a warrant of distraint, dated Sept. 21, 1865, and on the same day seized and distrained upon the brigantine M. A. Herera, and was proceeding to comply with the provisions of law in relation to a distraint and sale, when, on the twenty-sixth day of September, the brigantine was taken from his custody by the writ of replevin in this case.

Upon this state of facts it is difficult for the court to arrive at the conclusion that Annie M. Kidley was taxable upon annual gains, profit, or income for the year 1864. She does not appear to be embraced in either of the classes contemplated in the statute as a person residing in the United States, or a citizen of the United States residing abroad. 13 Stat. 281, 479. And even if she had been a person liable to pay a duty on income, and had neglected and refused, after legal demand, to pay the same, the amount due would have constituted a lien in favor of the United States from the time it was due until paid, only upon the property and rights of property belonging to her at that time. The warrant to distrain the goods of the delinquent would not authorize the collector to levy upon property mortgaged long before the tax was assessed or due, and to which, if the mortgagee had not acquired an absolute title, he had certainly the right of immediate and exclusive possession. If the United States had any lien, it could only have been on such "rights of property," if any, as Annie M. Kidley had in the brigantine when the tax was due. It is clear, upon the agreed statement of facts in this case, that she had at that time no such "rights of property" in the vessel as would justify a seizure of the vessel itself, and a sale of it either as her property or as property conveyed by her under a conveyance subject to a paramount lien in favor of the United States.

The question then arises, if Annie M. Kidley was not liable to be assessed for a duty or tax on income, and if the property seized by the deputy-collector is not fairly to be considered as liable to seizure as the property of Annie M. Kidley, even if she were legally taxable and delinquent, is the plaintiff entitled to maintain an action of replevin against the defendant, a deputy-collector of the internal revenue of the United States? The statute of the United States approved March 2, 1833 (4 Stat. 633), provides that all "property taken or detained by any officer or any other person, under authority of any revenue law of the United States, shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." The fiftieth section of the act of June 30, 1864 (4 Stat. 241), extended the provisions of the act of March 2, 1833, to all cases arising under the laws for the collection of internal duties,

licenses, or taxes, which have been or may be hereafter enacted; "and all persons duly authorized to assess, receive, or collect such duties or taxes under such laws are hereby declared to be and to have been revenue officers within the true intent and meaning of the said act, and entitled to all exemptions, immunities, benefits, rights, and privileges therein enumerated or conferred." The act of July 13, 1866 (14 Stat. 172), repeals the fiftieth section of the act of June 30, 1864; but it also provides that all property taken or detained by any officer or other person under authority of any revenue law of the United States shall be irrepleviable, and shall be deemed in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof. Where a statute is repealed, and one or more of its provisions is re-enacted in the repealing statute, so that there is no moment in which the repeal is in force without being replaced by the corresponding provisions of the new statute, in practical operation and legal effect this is to be considered rather as a continuance and modification of old laws than as an abrogation of the old and the re-enactment of new ones. Wright v. Oakley, 5 Metc. [Mass.] 406; Steamship Co. v. Joliffe, 2 Wall. [69 U. S.] 458. But it is contended that the provision of the statute, that property taken or detained by an officer or other person under authority of a revenue law of the United States, shall be irrepleviable, applies only to such property as he is authorized by his warrant to take, and does not extend to a case like the present, where it is claimed by the plaintiff that his property was seized under warrant to seize the goods of Annie M. Kidley, the supposed delinquent.

But the words of the statute are not susceptible of any such limitation, nor would such a construction of the statute accomplish the purposes or carry into effect the policy of the enactment. Mr. Justice Davis, in Nichols v. U. S., 7 Wall. [74 U. S.] 129, well observes: "The prompt collection of the revenue, and its faithful application, is one of the most vital duties of government. Depending as the government does on its revenue to meet not only its current expenses, but to pay the interest on its debt, it is of the utmost importance that it should be collected with dispatch, and that the officers of the treasury should be able to make a reliable estimate of means in order to meet liabilities." After pointing out the disastrous consequences to the finances of the country, of allowing parties to arrest the collection of the revenues of the country by suits prosecuted for alleged errors or mistakes, he shows most conclusively that the laws for the collection of the customs and the internal revenue each constitute a system, and provides suitable remedies for the benefit of those who complain of illegal assessment of taxes or illegal exactions of duties. In the case of People v. Albany Common Pleas, 7 Wend. 485, a warrant had been issued directing the collection of a military fine from one Hammond, a member of the society called "Shakers." The warrant was executed by a constable, by levying upon property belonging to the society, who caused the property to be replevied. The president of the court-martial who issued the warrant, and the constable who served it, being made defendants in the replevin, moved the court to set aside the plaint, which they refused, on the ground that it was not shown that the proceedings were regular before the court-martial which issued the warrant. The statute of New York provided "that no replevin shall lie for any property taken by virtue of any warrant for the collection of any tax, assessment, or fine, in pursuance of any statute of this state." Upon a motion in the supreme court for mandamus to the common pleas, the court (Savage, C. J.) say: "The common pleas supposed they had a right upon the motion before them to inquire into the regularity of the proceedings of the court-martial, which, I apprehend, is a mistake. If it appears upon the face of the warrant in the possession of the officer that he is authorized to collect any tax, assessment, or fine, replevin is not the proper remedy to correct his mistakes or trespasses. The warrant upon the face of it authorized the officer to take the property of Hammond. It refers to and purports to be in pursuance of a statute of this state. The officer took property belonging to a society of which Hammond was a member. Whether he had a right to do so or not is not to be inquired into in this motion, nor in this action. The legislature have thought proper to say that replevin shall not be brought in such a case. Any other appropriate remedy may be resorted to." This reasoning is applicable to the facts in this case. We are satisfied the plaintiff is not entitled to maintain the present action of replevin. The statute left him a resort to any other appropriate remedy. When the government for revenue purposes takes possession of any property of the citizens, it is the policy of the government that its power to provide for its expenditures should not be crippled by any liability to have that property taken by replevin from the officers intrusted with the duty of collecting revenue. The law provides for the citizen other and appropriate remedies. If the remedy of replevin existed before in case of property taken by authority or under color of legal process, it is taken away by the express provisions of the statute.

Judgment must therefore be entered for the defendant. He is entitled to nominal damages, because his right has been infringed, and to nothing more. There is no rule which requires the court to award to the defendant damages to the value of the property to him when he shows no right to it. Sanborn v. Leavitt, 43 N. H. 474; Ingraham v. Martin, 15 Me. 373. Judgment for defendant.